UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-2306-MWF (AFMx)          **Date:** November 13, 2020
**Title:**     Matthew Hogan v. Matthew J. Weymouth, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                    Court Reporter:
          Rita Sanchez                     Not Reported

          Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
          None Present                      None Present

**Proceedings (In Chambers):**   ORDER RE: MOTION TO DISMISS AMENDED
COMPLAINT BY DEFENDANT PATRICK CHUNG
[66]; MOTION TO DISMISS AMENDED
COMPLAINT BY DEFENDANT MATTHEW
WEYMOUTH [67]; MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT BY
DEFENDANT PRO SPORTORITY (ISRAEL) LTD.
[68]; MOTION TO STRIKE PLAINTIFF'S FIRST,
SECOND, THIRD, AND FOURTH CAUSES OF
ACTION IN THE FIRST AMENDED COMPLAINT
BY DEFENDNAT PRO SPORTORITY (ISRAEL)
LTD. [69] ; EX PARTE APPLICATION TO FILE
SUPPLEMENTAL BRIEF ON NEW AUTHORITIES
[81]

        Before the Court are four motions:

        First, there is the Motion to Dismiss Amended Complaint filed by Defendant
Patrick Chung ("Chung Motion to Dismiss"), filed on October 25, 2019. (Docket No.
66). On November 11, 2019, Plaintiff filed an Opposition. (Docket No. 72). On
November 25, 2019, Chung filed a Reply. (Docket No. 76).

        Second, there is the Motion to Dismiss Amended Complaint filed by Defendant
Matthew Weymouth ("Weymouth Motion to Dismiss"), filed on October 25, 2019.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 19-2306-MWF (AFMx)**          **Date:  November 13, 2020**
**Title:**      Matthew Hogan v. Matthew J. Weymouth, et al.

(Docket No. 67).  On November 11, 2019, Plaintiff filed an Opposition.  (Docket No. 73).

Third, there is the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant Pro Sportority (Israel) Ltd. ("Pro Sportority" or "12up"), filed on October 25, 2019.  ("Pro Sportority Motion to Dismiss" (Docket No. 68)).  On November 11, 2019, Plaintiff filed an Opposition.  (Docket No. 74).  Pro Sportority filed a Reply on November 25, 2019.  (Docket No. 77).

Fourth, there is the Motion to Strike Plaintiff's First, Second, Third, and Fourth Causes of Action in the First Amended Complaint filed by Defendant Pro Sportority on October 25, 2019.  ("Pro Sportority Motion to Strike" (Docket No. 69)).  On November 11, 2019, Plaintiff filed an Opposition (Docket No. 75).  Pro Sportority filed a Reply on November 25, 2019.  (Docket No. 78).

The Court has read and considered the papers filed in connection with the Motions and held a hearing on December 9, 2019.  For the reasons discussed below, the four motions are ruled upon as follows:

- The Chung Motion to Dismiss and the Weymouth Motion to Dismiss are **GRANTED** *in part* and **DENIED** *in part* as follows:

  o **DENIED** based on lack of personal jurisdiction.  The Court has specific personal jurisdiction over Chung and Weymouth because the online posts included "@rams" in the message, which notified the Rams about Chung's posts and made the post appear on the Rams page;

  o **DENIED** as to Plaintiff's defamation claim.  The Court cannot determine as a matter of law that Chung's social media posts are substantially true because a reasonable juror may find the gist or the sting of Plaintiff's text messages to be different if they were sent to a third party as opposed to Chung himself;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:       Matthew Hogan v. Matthew J. Weymouth, et al.

- o **GRANTED** *without leave to amend* as to Plaintiff's public disclosure of private facts claim.  The fact that Plaintiff made a derogatory remark about Chung after Chung's injury at the Super Bowl is not a private fact subject to protection;

- o **DENIED** as to Plaintiff's false light claim.  Plaintiff's false light claim is duplicative of his defamation claim and is not dismissed for the same reason;

- o **GRANTED** *without leave to amend* as to Plaintiff's intentional infliction of emotional distress claim.  Plaintiff provides no specific allegations to support his assertion that Defendants' conduct was extreme or outrageous; and

- o **GRANTED** *without leave to amend* as to Plaintiff's civil harassment claim against Weymouth.  Plaintiff provides no allegations of potential future harm that would warrant an injunctive relief.

- The Pro Sportority Motion to Dismiss is **GRANTED** *without leave to amend*. The Court lacks personal jurisdiction over Pro Sportority because it is not regarded as being at home in California and because it has not directed any conduct at California.  The request for jurisdictional discovery is denied.

- The Pro Sportority Motion to Strike is **DENIED** *as moot*.

Finally, the Ex Parte Application for Leave to File Supplemental Brief on New Authorities (Docket No. 81) is **DENIED** *as moot*.  The Court admonishes counsel for Pro Sportority for having attached the tentative to its Opposition (Docket No. 82), in direct violation of the Court's admonition on the face of the tentative.  Do not do that again.

## I.   **BACKGROUND**

The procedural history and facts of this action are well known to the parties. Therefore, the Court will limit its recitation of facts to those necessary for context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)              Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

### A.    Procedural Background

On March 27, 2019, Plaintiff filed this action against Defendants Weymouth, Chung, Pro Sportority, Rasmussen, Beasley Media Group, Inc. ("Beasley Media"), and Eannuzzo.  (Docket No. 1).

Defendants Beasley Media, Eannuzzo, and Rasmussen have been dismissed in this action.  (Docket Nos. 25, 62).  Therefore, the only remaining defendants are Weymouth, Chung, and Pro Sportority.

On August 5, 2019, Defendant Matthew Weymouth filed a Motion to Dismiss. (Docket No. 43).  On August 13, 2019, Defendant Pro Sportority filed a Motion to Dismiss and a Motion to Strike.  (Docket No. 44).  On September 27, 2019, the Court granted both Weymouth's and Pro Sportority's motions to dismiss for lack of jurisdiction with leave to amend, and denied Pro Sportority's Motion to Strike as moot. (Docket No. 62).

On October 11, 2019, Plaintiff filed a First Amended Complaint ("FAC"). (Docket No. 64).  Defendants Chung, Weymouth, and Pro Sportority filed the instant Motions.

### B.    Factual Background

The following allegations are from the FAC, as well as the exhibits attached to the FAC.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.'").

Plaintiff resides in Los Angeles and, until recently, worked for the Los Angeles Rams as a ticket sales account executive.  (*Id.* ¶ 2).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)          Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

Weymouth is a citizen of Massachusetts, who met Plaintiff through mutual friends during college.  (*Id.* ¶¶ 3, 14).  Since then, Plaintiff and Weymouth have spoken little, but remained connected on social media.  (*Id.* ¶ 15).

Chung is a citizen of Massachusetts.  (*Id.* ¶ 4).  Chung is a safety for the New England Patriots.  (*Id.*).  Chung owns and operates verified accounts on Instagram and Facebook.  (*Id.*).  On information and belief, Weymouth manages these accounts for Chung and sometimes posts to them on Chung's behalf.  (*Id.*).

Pro Sportority is an Israel corporation with its principal place of business in Israel.  (*Id.* ¶ 5).  It owns and operates the website www.12up.com and the Twitter account @12upSport.  (*Id.*).  Pro Sportority also does business as Minute Media and owns and operates the website www.minutemedia.com.  (*Id.*).  Pro Sportority holds itself out as having a "broad U.S. presence," including in California.  (*Id.* ¶ 6).  On its website, Pro Sportority lists Los Angeles as one of its ten locations worldwide.  (*Id.*).

On February 3, 2019, the Los Angeles Rams and the New England Patriots was set to play each other in Super Bowl LIII.  (*Id*. ¶ 18).  Both Plaintiff and Weymouth planned to attend the game.  (*Id.* ¶¶ 19, 22).  They communicated and met once before the game.  (*Id.* ¶ 23, 24).

On game day, Plaintiff attended the game in the Atlanta stadium.  (*Id.* ¶ 25).  In the third quarter of the game, Chung injured his arm.  (*Id*. ¶¶ 27, 33).  In the moment, Plaintiff was skeptical that Chung was truly injured and sent a text message to Weymouth insulting Chung.  (*Id.* ¶¶ 28, 29).  Plaintiff expected Weymouth to read it against their frequent playful exchanges of trash talk in the preceding days and weeks.  (*Id.* ¶ 30).  However, Weymouth responded angrily to Plaintiff's text.  (*Id.* ¶ 32).  After the game, it was reported that Chung's arm was broken.  (*Id.* ¶ 33).

On information and belief, Plaintiff alleges that Weymouth took screenshots of selected parts of the text exchange between them and made false and misleading representations about Plaintiff to Chung.  (*Id.* ¶¶ 34, 35).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

On February 6, 2019, screenshots of selected parts of the text exchange between Plaintiff and Weymouth were posted on Chung's Instagram account and Facebook page.  (*Id.* ¶ 36).  The posts made the text exchange appear to be between Plaintiff and Chung, not between Plaintiff and Weymouth.  (*Id.*).  The post also featured a comment, purportedly from Chung himself: "Matt Hogan from the @rams organization. This is disrespectful of you. I would never wish or say anything like this to anyone after they just broke their arm. You should be ashamed bro. Can't even believe it. But I pray for happiness and good health for you because a real man [*sic*]."  (*Id.* ¶ 37).  Around the same time, a post was published on Chung's Facebook page featuring the same screenshots and comment.  (*Id.* ¶ 38).  A few hours after they were published, the posts were deleted from Chung's Instagram and Facebook accounts.  (*Id.* ¶ 49).

On information and belief, Chung composed and posted both posts at Weymouth's direction or request or with Weymouth's express consent.  (*Id.* ¶ 39).  In the alternative, on information and belief, Weymouth composed the posts on Chung's behalf.  (*Id.* ¶ 40).  On information and belief, before composing and posting the Instagram and Facebook post, Weymouth and Chung discussed and considered "the likely impact of the posts on Hogan's employment with the Rams in Los Angeles, and on harassment directed at Hogan in Los Angeles."  (*Id.* ¶ 41).  On information and belief, Weymouth and Chung posted the two posts "with the intent to cause Hogan's employment with Rams in Los Angeles to be terminated and cause harassment to be directed at Hogan in Los Angeles, or did so with the expectation or knowledge of these results and in reckless disregard of them."  (*Id.* ¶ 42).

Based on the false statements in the posts, commenters posted remarks about Hogan that were disparaging, threatening, and harassing.  (*Id.* ¶ 45).  On Instagram, one commenter asked who Matt Hogan is.  (*Id.* ¶ 46).  On information and belief, Weymouth posted Hogan's Instagram username.  (*Id.* ¶¶ 46, 47).  As a result of the harassment, Hogan disabled his Instagram and Facebook accounts.  (*Id.* ¶ 48).

Around the time the posts were deleted, Chung sent a message to a Rams representative in Los Angeles stating: "Good morning. Don't fire him if it gets to that point. Don't want anyone to lose their job and take food out of his famil[y's] mouth.

---

**CIVIL MINUTES—GENERAL**                                                  **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                  Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

That's all I ask. Please. Discipline him another way. Don't let this hurt his family.
That's all I ask. Thank you." (*Id.* ¶ 50).  This message was forwarded to Hogan,
purportedly at Chung's request.  (*Id.*).  On information and belief, Chung sent other
messages or had phone conversations with one or more Rams representatives in Los
Angeles on the topic of Hogan's future with the Rams.  (*Id.* ¶ 51).

Later on the same day, Pro Sportority published a tweet on its Twitter account
featuring screenshots of the deleted Instagram post and stating that "Hogan is a 'Rams
exec' and that the text message shows him 'going after [Chung] for breaking his arm.'"
(*Id.* ¶ 52).  Also that day, Pro Sportority published an article, which embedded the
tweet and stated that: "one of the team's executives had some harsh words for Chung
after the game"; the "[l]eaked screenshots of text messages from Rams' executive Matt
Hogan" shows that Hogan "took some shots at Chung, calling the safety a 'b***h'";
"Chung is believed to be on the receiving end of these text messages (though not
confirmed)" and "[i]f his text message is anything to go by, [Plaintiff] is far from
forgiven in Chung's mind." (FAC, Ex. C).  Pro Sportority expressed doubts about the
story, qualifying the story with statements, such as "[i]f these messages are real," and it
was "not confirmed" whether Chung was on the receiving end of these text messages.
(FAC ¶ 54; FAC, Ex. C).

Plaintiff alleges the story told by Pro Sportority is "false in a number of ways."
(*Id.* ¶ 58).  First, Plaintiff asserts that he was "not a Rams executive" as the article
portrayed him to be but a "ticket sales account executive." (*Id.*).  Second, Plaintiff "did
not send the text to Chung as a taunt" but to his friend Weymouth "as a joke to be
understood in the context of their ongoing trash talk." (*Id.*).  The responding texts
were also from Weymouth, not Chung.  (*Id.*).  Finally, Plaintiff did "not know that
[Chung's injury referred to in the text] was serious." (*Id.*).

Plaintiff alleges that as a result of this story, he was "forced from his job, has
been turned down for other job opportunities, and has been unable to find employment
in his chosen field." (*Id.* ¶ 64).  Plaintiff has also "received harassing messages and
has been subjected to scorn, hatred, ridicule, and contempt on social media and
elsewhere." (*Id.* ¶ 67).  Finally, Plaintiff has "suffered emotional distress, impairment

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

to his reputation and standing in the community, personal humiliation, shame, and disgrace." (*Id*.).

Plaintiff asserts four claims against each Defendant: (1) defamation; (2) public disclosure of private facts; (3) false light publicity; and (4) intentional infliction of emotional distress intentional infliction of emotional distress. (*Id.* ¶¶ 70-89).  In addition, Plaintiff asserts a fifth claim of civil harassment against only Weymouth. (*Id.* ¶ 99-101).

Defendants Chung, Weymouth, and Pro Sportority seek to dismiss all claims against them for lack of personal jurisdiction and for failure to state a claim.

## II.   **LEGAL STANDARD**

### A.     **Rule 12(b)(2)**

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction.  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).  Because the motions are based on written materials rather than an evidentiary hearing, "[P]laintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990).

### B.     **Rule 12(b)(6)**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

---

**CIVIL MINUTES—GENERAL                                                8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020

Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice
of what the . . . claim is and the grounds upon which it rests . . . ."  *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47
(1957)).

       In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*,
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a
motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a
claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,
550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even
when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's
allegations, rather than their extravagantly fanciful nature, that disentitles them to the
presumption of truth.");  *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d
990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it
strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient
'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic
Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations
omitted).

       The Court must then determine whether, based on the allegations that remain
and all reasonable inferences that may be drawn therefrom, the complaint alleges a
plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen.
Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a
complaint states a plausible claim for relief is 'a context-specific task that requires the
reviewing court to draw on its judicial experience and common sense.'"  *Ebner v.
Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  Where
the facts as pleaded in the complaint indicate that there are two alternative
explanations, only one of which would result in liability, "plaintiffs cannot offer
allegations that are merely consistent with their favored explanation but are also
consistent with the alternative explanation.  Something more is needed, such as facts
tending to exclude the possibility that the alternative explanation is true, in order to
render plaintiffs' allegations plausible."  *Eclectic Props.*, 751 F.3d at 996-97; *see also
Somers*, 729 F.3d at 960.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

## III.   CHUNG MOTION TO DISMISS

### A.   Personal Jurisdiction

#### 1.   Jurisdictionally Relevant Facts

In connection with his Motion to Dismiss, Chung filed one declaration asserting that it contains jurisdictionally relevant facts.  (Declaration of Patrick Chung ("Chung Decl.") (Docket No. 66-1)).

When considering a motion to dismiss for lack of personal jurisdiction, courts are not confined to the plaintiff's complaint; it is appropriate to consider evidence such as party declarations.  *See, e.g.*, *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 949 (N.D. Cal. 2015) ("A trial court may rule on the issue of personal jurisdiction by 'relying on affidavits and discovery materials without holding an evidentiary hearing'") (quoting *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986)).  Although the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but [it] resolve[s] factual disputes in the plaintiff's favor."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks and citations omitted).

The following are jurisdictionally relevant facts from the Chung Declaration:

Chung is a professional football player for the New England Patriots.  (Chung Decl. ¶ 2).  He does not own any assets in California and does not reside in California.  (*Id.* ¶ 3).  Since joining the NFL in 2009, Chung has played a handful of football games in the state of California, but has not otherwise done business in the state.  (*Id.* ¶ 4).

On February 6, 2019, while in Massachusetts, Chung posted screenshots of text messages between Hogan and Weymouth on the internet, along with a comment written by Chung.  (*Id.* ¶ 5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

2.    **Discussion**

Plaintiff does not contend that Chung is subject to general jurisdiction.  Instead, Plaintiff argues that Chung is subject to specific jurisdiction.

Under the Ninth Circuit law, courts will exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied:

> (1) the defendant either "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is] reasonable.

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (internal quotation marks and citation omitted).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Here, the parties agree that purposeful direction analysis applies because Plaintiff's claims sound in tort.  *See Schwarzenegger*, 374 F.3d at 802 ("A purposeful direction analysis . . . is most often used in suits sounding in tort.")  The Ninth Circuit has established a three-part test for the purposeful direction analysis:  A defendant "purposefully directed his activities at the forum if he (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

Chung does not appear to dispute that he committed an intentional act, or that he knew Plaintiff would likely suffer harm in the forum state.  Therefore, only the second prong – *i.e.*, whether Chung's allegedly tortious action was expressly aimed at the forum – is at issue here.

Plaintiff argues that Chung's actions are sufficient to establish personal jurisdiction because he posted Plaintiff's private text message with Weymouth on social media and identified Hogan as being with the Los Angeles Rams.  (Opp. to Weymouth Motion to Dismiss at 3).  Moreover, Plaintiff points to the fact that the posts included "@rams," resulting in the Rams being notified of the posts and the posts appearing on the Rams' timeline.  (*Id.*).  As a result, Plaintiff argues that "[t]he predictable *and intended* result was that Hogan suffered harassment and lost his job in California."  (*Id.*) (emphasis in original).

In response, Chung argues that Plaintiff's speculation that Chung "intended" to deprive Hogan of his job is not adequate to establish "purposeful direction" because it does not show the required connection between the defendant's actions and the forum.  (*Id.* at 1).  Even if such intent were relevant, Chung further argues that Plaintiff's own complaint alleges facts showing that Chung had no intent to cost Hogan his job, and indeed tried to save it.  (*Id.*).

Chung also argues that his mere use of the "@rams" username in order to identify Hogan does not change the analysis.  (*Id.* at 2-3).  Chung first asserts that Plaintiff has not cited any case holding that an inclusion of a person's online username in an internet posting is sufficient to subject a non-resident poster to personal jurisdiction.  (*Id.*).  Chung further argues that, in the context of online speech, the full content of the posts themselves should be examined to determine whether it was tailored to a forum state audience.  (*Id.* at 3).  Here, Chung argues that his posts are not of special interest to California residents in general; rather they are directed specifically at Hogan.  (*Id.*).  Therefore, Chung argues that Plaintiff has not shown that *California* is the "focal point" of his posts "and of the harm suffered."  (*Id.*).

CIVIL MINUTES—GENERAL                                           12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:       Matthew Hogan v. Matthew J. Weymouth, et al.

It is a close call, but the Court determines that it has personal jurisdiction over Chung.  As a preliminary matter, under *Walden v. Fiore*, 571 U.S. 277 (2014), merely alleging that it was foreseeable or predictable that a ***plaintiff*** would suffer harm based on a defendant's actions is not sufficient to establish personal jurisdiction.  *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).  Instead, the litigation "must arise out of the contacts that the 'defendant *himself*' creates with the forum State."  *Walden*, 571 U.S. at 284 (emphasis in original).  Therefore, the "'minimum contacts' analysis looks to the defendant's contacts with the forum itself, not the defendant's contacts with persons who reside there."  *Id.* at 285.  In other words, "the plaintiff cannot be the only link between the defendant and the forum."  *Id.* "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Id.*

Here, Plaintiff has alleged that Chung's social media posts included "@rams."



---

CIVIL MINUTES—GENERAL                                                    13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

(FAC ¶ 36) (red box added).  By doing so, Plaintiff alleges that the Rams were notified of the post and the post appeared on the Rams' timeline.  Based on these allegations, the Court determines that Chung purposefully directed his posts to California because it directly targeted its message to the Rams page, which is a Los Angeles football team, and because it made the post appear on the Rams' timeline, which is likely to be more closely followed by California residents than the residents of other states.  Because Chung took actions to direct his posts to the Rams, this is not a situation where "the forum state was only implicated by the happenstance of Plaintiffs' residence."  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017).

Chung cites one case from Eastern District of Michigan, *Vangheluwe v. Got News, LLC*, 365 F. Supp. Ed 850 (E.D. Mich. 2019), to argue that including "@rams" is not sufficient to subject him to personal jurisdiction in California.  The Court disagrees.  In *Vangheluwe*, the district court examined whether "doxing," the practice of disclosing a person's identifying information on the internet to retaliate against and harass the "outed person," subjected the defendants to the forum state of the plaintiff.  *Id.* at 852.  The court concluded that one of the defendants, who posted the plaintiff's home address in Michigan, was subject to personal jurisdiction.  *Id.* at 861.  In doing so, the court emphasized that the doxing "involved providing a physical location—in Michigan."  *Id.*  Therefore, the court reasoned that "it [was] reasonable to infer that [the defendant's] tweet was intended to cause some action in Michigan or catch the eye of those most able to make contact with the [plaintiff's family], i.e., Michiganders."  *Id.*  The court clarified, however, that it "does not hold that all doxing amounts to constitutionally minimum contacts with the forum state" and implied that the court might have personal jurisdiction if the defendant "disclos[ed] a person's *online* information (e.g., their Facebook username) in hopes that others will engage in some sort of cyberattack."  *Id.* at 860 (emphasis in original).

Chung focuses on the fact that his posts similarly included an online username, not a physical address.  However, this distinction is not dispositive; the critical consideration is whether the posts contain information that is reasonably directed to the forum residents.  Here, Chung did not include Plaintiff's personal username, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

might not reveal that he resides in California or works for the Rams.  Instead, he included the username of "@rams," which is a well-known Los Angeles sports team.  While the "@rams" does not identify Plaintiff in the way that his physical address would, it is still reasonable to infer that Chung's posts were intended to cause some action in California or catch the eye of Rams fans, who are more likely to reside in California than in any other state.

Accordingly, the Court determines that Plaintiff has made a prima facie showing that California has personal jurisdiction over Chung.

B.     **Failure to State a Claim**

Chung additionally argues that all four claims against him should be dismissed for failure to state a claim.

1.     **Defamation**

To prevail on a claim of defamation, Plaintiff must prove that Defendants' remarks were (1) false; (2) defamatory; (3) unprivileged; (4) had a natural tendency to injure or cause special damage; and (5) were published, *i.e.* communicated to a third party.  *See Taus v. Loftus*, 40 Cal. 4th 683, 720, 54 Cal. Rptr. 3d 775 (2007).  "Truth is a complete defense to defamation."  *Terry v. Davis Community Church*, 131 Cal. App. 4th 1534, 1553, 33 Cal. Rptr. 3d 154 (2005).  Additionally, even if portions of the allegedly defamatory material are inaccurate, "minor inaccuracies do not amount of falsity so long as the substance, the gist, the sting, of the libelous charge can be justified."  *Masson v. New Yorker Magazine, Inc*, 501 U.S. 496, 517 (1991).

a.     Substantial Truth

Chung argues that Plaintiff's defamation claim fails because his statements were substantially true.  Plaintiff contends that Chung's posts are false because they allegedly stated that: (1) Plaintiff was "positioned to speak for the Rams"; (2) Plaintiff knew that Chung's injury was serious and/or that Chung would not return to the game

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-2306-MWF (AFMx)**                     **Date:  November 13, 2020**

Title:       Matthew Hogan v. Matthew J. Weymouth, et al.

when he sent the text; (3) Plaintiff sent the text to Chung rather than Weymouth; (4) Plaintiff received the responding texts from Chung; (5) Chung wrote social media posts; and (6) Plaintiff sent the text "as a taunt".  (FAC ¶ 43).

The Court determines that some of Plaintiff's allegations regarding falsity do not appear to be plausible.  First, Chung's social media does not state that Plaintiff was "positioned to speak for" the Rams.  Instead, it stated that Hogan was "from the @rams organization."  (FAC ¶¶ 36, 37).  It is undisputed that Plaintiff worked for the Rams at the time of the post.  Accordingly, the Court determines that the post did not imply that Plaintiff was "positioned to speak for the Rams."

Similarly, Chung's social media does not state that Plaintiff knew that Chung's injury was serious and/or that Chung would not return to the game when he sent the text.  Even if the posts imply such knowledge, however, the Court still determines such an implication likely does not make the post materially false.  At the time Plaintiff sent the text, Chung appeared to be injured and the trainers had come on the field.  (FAC ¶ 27).  Whether Plaintiff knew the full extent of Chung's injury at the time he sent the text messages does not appear likely to affect that Plaintiff sent the text message after he observed Chung appear to be injured.

The Court also concludes that Chung's posts accurately depict that Plaintiff intended his comment to be a taunt or a joke.  Specifically, his posts included a screenshot of Plaintiff's text saying that he was "just messing around" and that his comment was "all in just fun."  (FAC ¶ 36).

The critical issue, therefore, is whether the alleged implication that Plaintiff was directly corresponding with Chung, rather than with Weymouth, creates a sufficient difference to the mind of the reader.  To grant the Motion to Dismiss, the Court must find that no reasonable juror could ever conclude that the posts were materially false.  At the hearing, Plaintiff argued that a jury could reasonably find that it was qualitative worse to claim that Plaintiff sent the text message to Chung rather than to Weymouth.  In response, Chung argued that the recipient of the text does not matter in this case because the harm comes from the statement Plaintiff made, which is not in dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

Furthermore, Chung argued that there is not a meaningful difference between stating that Plaintiff sent the text messages to Chung directly or to Chung's close friend.

Plaintiff primarily relies on *Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010), to argue that a reasonable juror could conclude that the resulting portrayal of the posts were false and defamatory.  (Opposition to Chung Motion to Dismiss at 5-6).  In *Price*, the defendant broadcast a film clip of the plaintiff delivering a sermon, but presented the statement in a misleading context.  *Id.* at 995.  The primary statement in question came from a clip, in which the plaintiff said "I live in a 25-room mansion. I have my own $6 million yacht. I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles."  *Id.*  The defendant broadcast the clip suggesting that the plaintiff was boasting about his own wealth, but in fact, the clip was excerpted from part of a longer sermon, in which the plaintiff was speaking from the perspective of a hypothetical wealthy person.  *Id.*  The Ninth Circuit held the district court erred by dismissing the defamation claim as a matter of law on the grounds of lack of falsity.  *Id.* at 1003.  The Ninth Circuit explained that the video quotation of the plaintiff's statement materially changed the meaning of the plaintiff's words; "as misrepresented by the [c]lip, [the plaintiff was] speaking about himself, whereas in the context of the actual sermon, [the plaintiff was] telling a story about someone entirely different."  *Id.*

This is a close call.  On the other hand, Chung's excerpt did not misquote or mischaracterize Plaintiff's statement; Plaintiff admits that he sent the text calling Chung a derogative word.  On the other hand, Chung's posts, including Chung's comment below the text messages, imply that Plaintiff sent the text message directly to Chung, who appeared to have just been injured on the field.  Based on the alleged facts, the Court cannot determine as a matter of law whether the difference in the recipient "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517.  A reasonable juror may find the significance of the text message to be different if the text was sent to a third party as opposed to Chung himself.  Therefore, the Court cannot conclude that the posts are substantially true as a matter of law.

---

CIVIL MINUTES—GENERAL                                                    17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

The Court notes that it previously examined a similar issue when granting
Defendants Beasley Media Group, LLC and Melissa Eannuzzo's Motion to Dismiss.
(Docket No. 48 at 6-10).  There, the Court held that similar inaccuracies did not affect
the substance of the communications, which is that Plaintiff called Chung a derogatory
word after he observed Chung get injured in the Super Bowl.  (*Id.* at 9).  The
conclusion here is arguably inconsistent, but even so the result was correct – the gist of
the articles was about Chung's response to Plaintiff.The Court now amends the
previous order and holds that the Court cannot determine that the inaccuracies do not
affect the substance of the communications as a matter of law.

### b.     Defamatory

Chung additionally argues that the defamation claim should fail because the
false statements at issue are not defamatory.  (Chung Motion to Dismiss at 13).
"Defamation is a false and unprivileged publication that exposes the plaintiff to hatred,
contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or
which has a tendency to injure him in his occupation."  *Brodeur v. Atlas Entm't, Inc.*,
248 Cal. App. 4th 665, 678, 204 Cal. Rptr. 3d 483 (2016) (internal quotation marks and
citation omitted).

The Court cannot determine this issue as a matter of law.  A reasonable juror
may determine that sending the text at issue to Chung directly as opposed to a third
party exposed the plaintiff to more hatred, contempt, or ridicule.

### c.     Protected Opinion

Finally, Chung argues that Plaintiff cannot recover for defamation because
Chung's social media posts constitute opinion protected by the First Amendment.
(Chung Motion to Dismiss at 14).  Chung argues that the posts merely expressed
Chung's opinion based on the disclosed text messages that Hogan's statements were
"disrespectful" and that Hogan should be "ashamed" of them.  (*Id.*).  Because Chung
attached the texts, which formed the bases of Chung's opinions, Chung argues that his
posts are protected under the First Amendment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

In response, Plaintiff argues that a pure expression of opinion is actionable if it
"could be interpreted as including false assertions as to factual matters."  (Opposition
to Chung Motion to Dismiss at 6) (citing *Masson*, 501 U.S. at 516).

The Court already determined that Chung's post may imply that Plaintiff sent
the text messages directly to Chung, instead of Weymouth, and that a reasonable juror
may find this distinction meaningful in assessing the severity of Plaintiff's conduct.
Because the alleged misrepresentation regarding to whom Plaintiff sent the text
messages at issue is a false assertion as to a factual matter, and not a matter of Chung's
opinion, the Court concludes that there is at least one assertion in Chung's posts which
are not protected under the First Amendment.

Accordingly, the Chung Motion to Dismiss is **DENIED** as to Plaintiff's
defamation claim.

## 2.     Public Disclosure of Private Facts

"The elements for a claim of invasion of privacy based on the public disclosure
of private facts are as follows: (1) public disclosure (2) of a private fact (3) which
would be offensive and objectionable to the reasonable person and (4) which is not of
legitimate public concern."  *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App.
4th 856, 868, 104 Cal. Rptr. 3d 352 (2010).  The fact disclosed must be matters as to
which plaintiff had an "objectively reasonable expectation of privacy."  *Id.* at 905.
"[A]n essential element of [this] tort is that the facts at issue be true."  *Leidholdt v.
L.F.P. Inc*, 860 F.2d 890, 895 (9th Cir. 1988) (citation omitted).

Here, Plaintiff does not clearly state which "private fact" is at issue in this claim.
However, the Court assumes that this claim revolves around the fact that Plaintiff said
a derogatory word about Chung to his friend in a text message, as that is the only
"fact" that arguably caused Plaintiff harm.  Plaintiff emphasizes that argues that a jury
should be allowed to decide whether a reasonable person would consider this fact to be
worthy of protection under California.  (Opposition to Chung Motion to Dismiss at 7).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

In opposition, Chung argues that to assert a public disclosure or private facts claim, "the disclosure at issue must reveal intimate details of plaintiffs' lives." (Chung Motion to Dismiss at 17) (citing *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 980 (N.D. Cal. 2019)).  Because Plaintiff's text messages which Chung posted did not reveal intimate private details of Plaintiff's life, Chung argues that the claim fails as a matter of law.

The Court agrees with Chung.  "Mindful that the balance is always weighted in favor of free expression, . . . and that we must not chill First Amendment freedoms through uncertainty, . . . a plaintiff [must] prove, in each case, that the publisher invaded his privacy with reckless disregard for the fact that reasonable men would find the invasion highly offensive."  *Briscoe v. Reader's Digest Ass'n, Inc.*, 4 Cal. 3d 529, 542–43, 93 Cal. Rptr. 866 (1971), *overruled on other grounds by Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679 (2004).  A private fact qualifies as "offensive and objectionable to the reasonable person" where its disclosure would "shock the community's notions of decency."  *Ignat v. Yum! Brands, Inc.*, 214 Cal. App. 4th 808, 820–21 (2013) (internal quotation marks omitted);

Applying this standard, several courts have explained that the disclosure must involve unwarranted publication of "intimate details" of the plaintiff's private life.  *See Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047, 201 Cal. Rptr. 665 (1984) ("[A] crucial ingredient of the tort premised upon invasion of one's privacy is a public disclosure of private facts . . ., that is the unwarranted publication of *intimate details of one's private life* which are outside the realm of legitimate public interest.") (citation omitted) (emphasis added); *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, 251, n.13 228 Cal. Rptr. 215 (1986) ("The public disclosure branch of the privacy tort involves the publication by defendant of non-newsworthy *intimate details of plaintiff's private life*") (emphasis added); *Diaz v. Oakland Tribune, Inc.*, 139 Cal.App.3d 118, 126 (1983) (cause of action for public disclosure of private facts protects against "publicity [that] is so *intimate and unwarranted as to outrage the community's notions of decency*") (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)              Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

Here, the disclosure relates to the fact that Plaintiff said a derogatory word about Chung to his friend after observing him get injured at a Super Bowl game.  This information does not involve sensitive or intimate private fact of Plaintiff, and Plaintiff has not provided any authority holding that disclosure of similar information has been protected under a public disclosure of private facts claim.  In contrast, Chung has provided authority that suggests otherwise.  *See e.g., Karimi*, 361 F. Supp. 3d at 980 (dismissing claim where the defendant disclosed that the plaintiff had been suspended from law school for a period of time because the disclosure did not reveal intimate details of the plaintiff's life); *Taus*, 40 Cal. 4th at 717-18 ( "[W]e have very serious doubts whether . . . the statement[] . . . that Jane Doe engaged in 'destructive behavior that I cannot reveal on advice of my attorney' . . . constitutes disclosure of the kind of sufficiently sensitive or intimate private fact which would be offensive and objectionable to the reasonable person' so as to support a cause of action under the public-disclosure-of-private-facts tort.") (internal quotation marks and citation omitted).

Moreover, to deny summary judgment here would, in essence, allow juries to censor use of the Internet.  That simply is not in keeping with the nature of the tort.

The parties additionally argue whether the text messages are of "legitimate public concern."  Because the Court determines that the texts are not "private facts" subject to protection, the Court need not determine whether they also involve legitimate public concern.

Accordingly, the Chung Motion to Dismiss is **GRANTED** *without leave to amend* as to Plaintiff's public disclosure of private fact claim.

### 3.    False Light

"When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action."  *Jackson v. Mayweather*, 10 Cal. App.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

5th 1240, 1264, 217 Cal. Rptr. 3d 234 (2017) (affirming dismissal of false light claims because they "suffer from the same fatal defects as [the plaintiff's] defamation claim").

Here, Plaintiff's false light claim is predicated on the same conduct and statements that are alleged as the basis for the defamation claim.  Accordingly, the Chung Motion to Dismiss is **DENIED** as to Plaintiff's false light claim.

### 4.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or with reckless disregard of the probability of causing, emotional distress; (2) plaintiff suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Swasey v. Seterus, Inc.*, No. 16-CV-1633-TLN-EFB, 2018 WL 3017554, at *13 (E.D. Cal. June 14, 2018).

Here, Defendants argue, and the Court agrees, that the claim for intentional infliction of emotional distress fails because Plaintiff fails to allege sufficient facts to establish that Defendants' conduct was "extreme and outrageous."  (Chung Motion to Dismiss at 16).  "A defendant's conduct is 'outrageous' when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51, 95 Cal. Rptr. 3d 636 (2009) (citations and some internal quotation marks omitted).  "Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Molko v. Holy Spirit Assn.*, 46 Cal. 3d 1092, 1122, 252 Cal. Rptr. 122 (1988).  However, outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes*, 46 Cal. 4th at 1051.  Whether conduct is "extreme and outrageous" is a question of fact for a jury to resolve unless reasonable minds could not differ on the issue.  *Molko*, 46 Cal. 3d at 1123.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

Plaintiff argues that Chung's posting of the text messages in a misleading light
sparked a predictable chain of events that resulted in Plaintiff being harassed, losing
his job, and suffering mental anguish.  (Opposition to Chung Motion to Dismiss at 8-
9).  Plaintiff argues that a jury could conclude that these actions showed an "alarming
absence of sensitivity of civility."  As support, Plaintiff cites one case, *Huntingdon Life
Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228,
1260, 29 Cal. Rptr. 3d 521 (2005).

*Huntingdon* is distinguishable.  There, the court held that a defendant's website
entries, exposing and protesting an employee of an animal testing lab, could support a
cause of action for intentional infliction of emotional distress.  *Id.* at 1260.  But in
concluding that the plaintiff's allegations were sufficient to state a claim for intentional
infliction of emotional distress, the Court of Appeal specifically noted that the
defendant's website entries "target[ed] [the plaintiff] for illegal activity such as civil
disobedience ***and threaten[ed] [the plaintiff's] safety***."  *Id.* at 1240 (emphasis added).

Unlike in *Huntingdon*, Chung is not alleged to have threatened Plaintiff and his
conduct does not reveal an alarming absence of sensitivity and civility.  Rather, Chung
published a text message between Plaintiff and Weymouth, in which Plaintiff made a
derogatory comment about Chung and attempted to clarify that it was a joke.  (FAC
¶ 36).  Chung then added the following comment: "Matt Hogan from the @rams
organization. This is disrespectful of you. I would never wish or say anything like this
to anyone after they just broke their arm. You should be ashamed bro. Can't even
believe it. But I pray for happiness and good health for you because a real man [sic]."
(FAC ¶ 37).  Plaintiff has failed to establish that Chung's conduct was so extreme or
outrageous as to exceed all bounds of that usually tolerated in a civilized community.

The Court need not reach the issue of whether the allegations are sufficient for
severe emotional distress, although Chung makes a strong argument that they are not.
The FAC only alleges that he has "suffered emotional distress, impairment to his
reputation and standing in the community, personal humiliation, shame, and disgrace."
(*See* FAC ¶ 67).  Such a conclusory allegation is not sufficient to establish severe
emotional distress.  *See Hughes*, 46 Cal. 4th at 1051 (allegation that the plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

suffered "discomfort, worry, anxiety, upset stomach, concern, and agitation"
insufficient); *Duronslet*, 266 F. Supp. 3d at 1220 (allegation that plaintiff suffered
"shock, embarrassment, and emotional distress" insufficient).

Accordingly, the Chung Motion to Dismiss is **GRANTED** *without leave to
amend* as to Plaintiff's claim for intentional infliction of emotional distress.

## IV.    WEYMOUTH MOTION TO DISMISS

### A.    Personal Jurisdiction

#### 1.    Jurisdictionally Relevant Facts

In connection with his Motion to Dismiss, Weymouth filed a declaration.
(Declaration of Matthew Weymouth ("Weymouth Decl.") (Docket No. 67-1)).

The following are jurisdictionally relevant facts from the Weymouth
Declaration:

Weymouth is a resident of Mansfield, Massachusetts, and has lived in
Massachusetts for virtually his entire life.  (Weymouth Decl. ¶ 2).  He has traveled to
California only one time in his life, in 2012, for a trip lasting approximately three days.
(*Id.* ¶ 4).  He does not own any assets in California and does not conduct business in
California.  (*Id.*).

Weymouth also declares that he did not make misrepresentations concerning the
circumstances of the text messages and that he did not compose, edit, or post the
Instagram and Facebook posts at issue.  (*Id.* ¶¶ 6-7).  Plaintiff has not opposed these
statements in his Opposition and the Court may not assume the truth of allegations in a
pleading which is contradicted by affidavit.  *See Mavrix*, 647 F.3d at 1223.  Therefore,
the Court does not consider Plaintiff's allegation that Weymouth composed and posted
the social media posts at issue to determine Weymouth's Motion to Dismiss for lack of
personal jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:       Matthew Hogan v. Matthew J. Weymouth, et al.

### 2.    Discussion

Plaintiff does not contend that the Court has general personal jurisdiction over Weymouth.  Instead, the parties only dispute whether the Court has specific personal jurisdiction over Weymouth.

The FAC alleges that Weymouth was involved in Chung's social media posts, and therefore, is subject to specific personal jurisdiction.  For example, Plaintiff alleges that "[o]n information and belief, Chung composed and posted the Instagram and Facebook posts at Weymouth's direction or request or with Weymouth's express consent."  (FAC ¶ 39).  Weymouth does not dispute this allegation, but instead, argues that the post by itself does not show the kind of connection to the forum state that is required under the precedent established by the United States Supreme Court.  (Weymouth Motion to Dismiss at 9).

Because Weymouth is alleged to have directed or requested Chung's online posts, the Court concludes that the same reasoning regarding personal jurisdiction applies here as it did for Chung.  The inclusion of "@rams" in the posts at issue resulted in the the Rams being notified of the posts and the posts appearing on the Rams' timeline.  Therefore, the Court determines that Weymouth purposefully directed his activities to the forum state.

Accordingly, the Court determines that Plaintiff has made a prima facie showing that California has personal jurisdiction over Weymouth.

### B.    Failure to State a Claim

Weymouth additionally argues that all five claims against him should be dismissed for failure to state a claim.  (Weymouth Motion to Dismiss at 11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

### 1.      First Four Claims

Plaintiff's allegations against Weymouth for the first four claims are essentially the same as Plaintiff's allegations against Chung.  The parties also repeat substantially the same arguments in their motions.

Therefore, for the same reasons articulated above in the Chung Motion to Dismiss, the Court concludes that the Weymouth Motion to Dismiss is **DENIED** as to the defamation and the false light claims, but **GRANTED** *without leave to amend* as to the public disclosure of private facts and the intentional infliction of emotional distress claims.

### 2.      Civil Harassment

Plaintiff alleges that Weymouth made "credible threats of violence" against Plaintiff, and seeks an "order enjoining defendant Weymouth from harassing or contacting the plaintiff."  (FAC ¶ 99; Prayer).

California Code of Civil Procedure section 527.6 allows for a "person who has suffered harassment . . . [to] seek a temporary restraining order and an order after hearing prohibiting harassment."  Cal. Code Civ. Proc. § 527.6(a).  "An injunction is authorized only when it appears that wrongful acts are likely to recur."  *Russell v. Douvan*, 112 Cal. App. 4th 399, 402, 5 Cal. Rptr. 3d 137 (2003).

Here, Weymouth argues that the FAC fails to allege any facts that justify an injunction under this standard.  (Weymouth Motion to Dismiss at 21).  All alleged acts that supposedly constituted "harassment" occurred by February 6, 2019, yet Plaintiff waited until March 28, 2019 to file his Complaint and motion to prevent harassment.  (*Id.*).  According to Weymouth, such conduct demonstrates that Plaintiff did not believe further acts were likely to recur during the intervening six weeks.  (*Id.*).  Further, Weymouth notes that Plaintiff has not alleged facts showing any supposed "harassment" that has occurred since early February 2019, or is likely to recur again – even though Plaintiff amended his Complaint in October 2019.  (*Id.*).  Therefore,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

Weymouth argues that Plaintiff has failed to demonstrate that unlawful harassment exists today or that such acts are likely to recur.  (*Id.*).

In response, Plaintiff argues that a likelihood of recurrence is a question of fact which is decided after an evidentiary hearing.  (Opposition to Weymouth Motion to Dismiss at 9).  Plaintiff further notes that he has alleged that Weymouth has made credible threats of violence, and this allegation supports an inference that Weymouth's harassment could recur.  (*Id.* at 10).

As a preliminary matter, the Court notes that Section 527.6 creates "substantive rights against certain types of harassment," allowing individuals to "fil[e] a petition for orders" without filing a complaint or asserting a separate cause of action.  Cal. Code Civ. Proc. § 527.6(d).  When determining whether to enjoin a litigant's harassing conduct, several federal district courts have applied "the substance of the state law" under section 527.6, but applied the federal procedural rules.  *See, e.g., Volis v. City of Los Angeles Housing Authority*, No. 13–cv–01397–MMM, 2013 WL 12205684 at *1 (C.D. Cal. July 22, 2013) (determining the substantive rights provided under section 527.6 but "applying the federal procedural framework for granting preliminary injunctive relief to determine whether it should grant or deny [Plaintiff's] request for an injunction.).  The Court will apply the federal procedural rules here.

Here, Plaintiff has not alleged any facts that demonstrate that Weymouth has engaged in harassing conduct since February 6, 2019, nor has Plaintiff alleged that any of Weymouth's past actions credibly make Plaintiff fear for the future.  Plaintiff's only argument appears to be that Weymouth has made a threat once before, and therefore, he could make another threat or engage in harassing conduct again.  Plaintiff has not provided, and the Court is not aware of, any authority holding that a plaintiff can demonstrate future harm by merely alleging that past harm occurred.  In fact, such an argument would run counter to well-established precedent.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 1670 (1983) ("The speculative nature of Lyons' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                  Date:  November 13, 2020
Title:     Matthew Hogan v. Matthew J. Weymouth, et al.

Accordingly, Plaintiff is not entitled to injunctive relief under section 527.6, and the Weymouth Motion to Dismiss is **GRANTED** *without leave to amend* as to Plaintiff's civil harassment claim.

## V.    PRO SPORTORITY MOTION TO DISMISS

### A.    Jurisdictionally Relevant Facts

In connection with its Motion to Dismiss, Pro Sportority filed a declaration of Shirley Deshe.  (Declaration of Shirley Deshe ("Deshe Decl.") (Docket No. 68-2)).

The following are jurisdictionally relevant facts from the Deshe Declaration:

Deshe has been employed by Pro Sportority since May 7, 2014, and is currently the Executive Vice President of Finance at Pro Sportority.  (Deshe Decl. ¶ 2).  Pro Sportority is a limited liability company organized and existing under the laws of Israel.  (*Id.* ¶ 3).  It is headquartered in Israel and runs its operations from Israel.  (*Id.*).  Pro Sportority has no employee or office in California.  (*Id.* ¶ 4).

Pro Sportority and its affiliated companies do have a branding and informational website, www.minutemedia.com, which generally describes their affiliated Minute Media brands, advertisers, and publishing partners.  (*Id.* ¶ 5).  Contrary to the implications in the FAC, the website's reference to various locations around the world, including in the United States, refers generally to the global footprint of an affiliated group of companies.  (*Id.*).

### B.    Discussion

#### 1.    General Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [*i.e.*, general] jurisdiction there.  For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)                    Date:  November 13, 2020
Title:      Matthew Hogan v. Matthew J. Weymouth, et al.

a corporation, it is an equivalent place, one in which the corporation is fairly regarded at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks and citations omitted).  Generally speaking, a corporation is "at home" for personal jurisdiction purposes only in its place of incorporation and where it maintains its principal place of business.  *See id.; see also Ranza v. Nike, Inc.,* 793 F.3d 1059, 1069 (9th Cir. 2015).  "Only in an 'exceptional case' will general jurisdiction be available anywhere else."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n. 19).  This straightforward rule of general jurisdiction "afford[s] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims."  *Daimler*, 571 U.S. at 137.

Here, it is undisputed that Pro Sportority is an Israel corporation with a principal place of business in Israel.  (FAC ¶ 5; Deshe Decl. ¶¶ 2-3).  Nonetheless, Plaintiff argues that Pro Sportority is subject to general personal jurisdiction in California because Pro Sportority's website covers U.S. sports, proclaims to have a broad U.S. presence, including in Los Angeles, and operates media brands that cover sporting events and teams in California.  (Opposition to Pro Sportority Motion to Dismiss at 4).

This argument is not persuasive.  Pro Sportority is incorporated in Israel and has a principal place of business in Israel.  Therefore, it is presumptively at home in Israel. The Court acknowledges that "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Daimler*, 571 U.S. at 139, n.19.  However, Plaintiff has not pointed to any facts that would present such exceptional circumstances here.  Even if Pro Sportority covers events and teams in California and even if it has a "presence" in Los Angeles, Plaintiff's allegations do not establish that Pro Sportority's "affiliations with [California] are so 'continuous and systematic' as to render [it] essentially at home in the forum state."  *Id.*

Accordingly, the Court does not have general personal jurisdiction over Pro Sportority.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-2306-MWF (AFMx)              Date:  November 13, 2020
Title:       Matthew Hogan v. Matthew J. Weymouth, et al.

### 2.    Specific Jurisdiction

The Court has already determined that the Court lacks specific personal jurisdiction over Pro Sportority.  (Docket No. 62 at 13).  Because Plaintiff has not added any new allegations in his FAC that would affect the Court's analysis, the Court concludes that there is insufficient evidence to establish personal jurisdiction over Pro Sportority.

### C.    Jurisdictional Discovery

If the Court finds that the current evidence is insufficient to establish personal jurisdiction, Plaintiff asks the Court to defer the motion and grant leave for Plaintiff to conduct jurisdictional discovery.  (Opposition to Pro Sportority Motion to Dismiss at 3).  Plaintiff argues that discovery is needed to establish general personal jurisdiction.  (*Id.* at 4).  Specifically, Plaintiff seeks to determine how important California is to Pro Sportority's business, what percentage of its readership is in California, and how much advertising it sells in California.  (*Id.*).  Moreover, Plaintiff suggests that Pro Sportority has hired at least one staff writer who is based out of San Diego, California.  (*Id.* at 4-5).

The cases establishing this Court's broad discretion in regard to jurisdictional discovery are cited above.  The Court is unconvinced that any newly-discovered facts would change the Court's general personal jurisdiction as explained above.  Accordingly, Plaintiff's request for leave to conduct jurisdictional recovery is therefore **DENIED.**

## VI.    CONCLUSION

For the reasons stated above, the three motions are ruled as follows:

- The Chung Motion to Dismiss is **GRANTED** *in part* and **DENIED** *in part*. The Motion is granted without leave to amend as to the public disclosure of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 19-2306-MWF (AFMx)**          **Date:  November 13, 2020**
Title:       Matthew Hogan v. Matthew J. Weymouth, et al.

private facts claim and the intentional infliction of emotional distress claim.
However, the Motion is denied as to the defamation and the false light claims.

- The Weymouth Motion to Dismiss is **GRANTED** *in part* and **DENIED** *in part*.
  The Motion is granted without leave to amend as to the public disclosure of
  private facts claim, the intentional infliction of emotional distress claim, and the
  civil harassment claim.  However, the Motion is denied as to the defamation and
  the false light claims.

- The Pro Sportority Motion to Dismiss is **GRANTED** *without leave to amend*
  for lack of personal jurisdiction.

- The Pro Sportority Motion to Strike is **DENIED** *as moot*.

  Pro Sportority is **DISMISSED** from this action *without prejudice*.


IT IS SO ORDERED.